IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RICHELE MALDONADO,  )
    Plaintiff,  )
                       )
    v.  )    2:14-cv-1064
                       )
COMMISSIONER OF  )
SOCIAL SECURITY,  )
    Defendant.  )

MEMORANDUM and ORDER

Mitchell, M.J.

      Presently before the Court for disposition are cross motions for summary judgment. For the reasons set forth below, the plaintiff's motion (ECF No.11) will be granted; the defendant's motion (ECF No.13) will be denied, and the decision of the Commissioner will be reversed.

      On August 13, 2014, Richele Maldonado by her counsel, filed a complaint pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. §405(g) for review of the Commissioner's final determination disallowing her claim for Supplemental Security Income benefits under Sections 1614 and 1631 of the Act, as amended, 42 U.S.C. §1381 cf.

      An original application for Supplemental Security Income Benefits was filed on June 1, 2009 (R.208-214) and denied on October 21, 2009 (R.96-106). The instant application for Supplemental Security Income Benefits was filed on October 31, 2011 (R.215-223). On February 7, 2012, the plaintiff requested a hearing (R.107) and pursuant to that request a hearing was held on January 24, 2013 (R.54-77). In a decision filed on March 12, 2013, an Administrative Law Judge denied benefits (R.34-47), and on April 4, 2013, the plaintiff requested reconsideration of that determination (R.9). On June 13, 2014, the Appeals Council affirmed the prior determination (R.1-4). The instant complaint was filed on August 13, 2014.

      In reviewing an administrative determination of the Commissioner, the question before any court is whether there is substantial evidence in the agency record to support the findings of the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she

was disabled within the meaning of the Social Security Act. Richardson v. Perales, 402 U.S. 389 (1971); Adorno v. Shalala, 40 F.3d 43 (3d Cir. 1994).

It is provided in 42 U.S.C. Section 405(g) that:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Johnson v. Comm'r. 529 F.3d 198 (3d Cir.2008) and the court may not set aside a decision supported by substantial evidence. Hartranft v. Apfel, 181 F.3d 358 (3d Cir.1999).

The purpose of the Supplemental Security Income Program is to provide additional income to persons of limited resources who are aged, blind or disabled persons. 42 U.S.C. §1381; Chalmers v. Shalala, 23 F. 3d 752 (3d Cir. 1994). To be eligible for such benefits, an individual's income must not exceed a certain established maximum and he/she must fulfill certain eligibility requirements.

As set forth in 20 C.F.R. § 416.905(a) disability is defined as:

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

In addition, a person will be considered disabled if he/she is

> (a) ... permanently and totally disabled as defined under a State plan approved under title XIV or XVI of the Social Security Act, as in effect for October 1972; (b) ... received aid under the State plan ... for the month of December 1973 and for at least one month prior to July 1973; and (c) ... continue[s] to be disabled as defined under the State plan.

20 C.F.R. § 416.907.

A physical or mental impairment is defined in 20 C.F.R. §416.908 as an:

> impairment [which] result[s] from anatomical, physiological, or
> psychological abnormalities which [are demonstrated] by
> medically acceptable clinical and laboratory diagnostic
> techniques.

For purposes of determining whether or not the plaintiff met the eligibility requirements, certain evidence was considered by the Commissioner.

At the hearing held on January 24, 2013 (R.54-77), the plaintiff appeared with counsel (R.56) and testified that she was born on November 22, 1972 (R.59); that she graduated from high school and earned an associate's degree in business (R.59); that she has one child (R.60) and that she is receiving state medical support and food stamps (R.60).

The plaintiff also testified that she worked as a bank teller and waitress (R.60) and that she stopped working in 2011 due to her poor job performance (R.61).

The plaintiff also testified that she experiences panic attacks and depression (R.61-62, 68-69); that she receives mental health treatment and takes psychiatric medication (R.63-64); that she has difficulty concentrating (R.65); that she is able to attend to her own needs (R.66) and that she sleeps most of the day (R.67).

At the hearing a vocational expert was called upon to testify (R.70-73). The witness classified the plaintiff's prior work experience as light and semi-skilled in nature (R.70). When asked to assume an individual of the plaintiff's age, education and prior work experience, who required a low stress environment and avoiding contact with the general public or performing team work, she testified that such an individual could not return to the plaintiff's former work but could perform a number of other jobs existing in the national economy (R.70-71). However, the witness also testified that if such an individual had to miss work, be off task frequently or react inappropriately to supervision, she could not be employed (R.71-72).

In addition, certain other evidence was considered.

The plaintiff was hospitalized at West Penn Hospital from February 17, 1987 through March 18, 1987 for treatment of a bi-polar disorder with a depressed phase. Medication was provided (R.300-303).

In a report covering general medical treatment rendered between August 17, 1998 and August 16, 2009, Dr. Ruth D. Martin noted a labile mood and vegetative symptoms (R.304-316).

3

In a report of a consultative examination conducted on October 6, 2009, Charles Kennedy, Ph.D. diagnosed a bi-polar disorder with fair prognosis. Any limitations were reported as slight to moderate (R.317-324).

In reports of a mental residual functional capacity assessments completed on March 31, 1997 and October 19, 2009 John Rohar, Ph.D./DDS found almost no limitations except for a few moderate ones. A diagnosis of a bi-polar disorder and depression was made. After reviewing Dr. Martin's report he noted that the plaintiff's impairments do not preclude her from engaging in competitive work on a sustained basis (R.325-354).

The plaintiff was treated at the Alle-Kiski Medical Center on May 14, 2011 for left shoulder pain. Medication was prescribed. An MRI performed on May 23, 2011 revealed edema of the plaintiff's left shoulder (R.359-373).

The plaintiff was treated at St. Margaret Hospital on June 13, 2011 for a left shoulder fracture and a surgical repair was performed (R.374-388).

The plaintiff was seen at Three Rivers Orthopedic Associates between June 6, 2011 and July 26, 2011 for post-surgical visits. It was noted that she had not fractured her should but rather had calcium deposits which were excised (R.389-397).

The plaintiff was hospitalized at Armstrong County memorial Hospital from October 12, 2011 through October 18, 2011 for a bi-polar disorder with depression and psychotic features. She was treated with medication (R.398-430).

The plaintiff received follow-up treatment from Dr. Robert T. Dunn between May 17, 2011 and October 27, 2011 for a bi-polar disorder and chronic obstructive sleep disorder. Her medications were continued (R.431-442).

The plaintiff was treated by Dr. Ruth D. Martin between August 26, 2009 and November 8, 2011 for depression. Moderate to marked limitations were noted and medication was prescribed (R.443-449).

On January 9, 2012, Valorie Rings Psy.D. stated that the plaintiff did not present an immediate suicidal or homicidal threat (R.459-460).

The plaintiff was treated at Greater Pittsburgh Orthopaedics between May 22, 2012 and June 1, 2012 for shoulder pain (R.527-532).

The plaintiff was treated at the Family Counseling Center of Armstrong County between March 13, 2012 and October 31, 2012 for a bi-polar disorder and a panic disorder. Medication and counseling were provided (R.505-526, 533-569).

In reports covering the period from January 29, 2010 through October 31, 2012, Dr. Robert T. Dunn diagnosed a bi-polar disorder and chronic sleep apnea. The plaintiff also had surgery for calcium tendonitis of her left rotator cuff. Medication was provided (R.469-504, 570-585).

In a report covering treatment between August 17, 1998 and April 25, 2013, Dr. Ruth Martin indicated mild to moderate restrictions in daily activities but marked limitations on dealing with others or being involved in stressful circumstances with repeated inability to maintain appropriate affect in normal job situations. It was reported that the plaintiff saw the doctor once or twice a year (R.14-33).

In a report of a mental health evaluation conducted in December 2014, Cynthia Peterson-Handley, Ph.D. diagnosed a bi-polar I disorder, depression and panic disorder. The prognosis was poor. Limitations were moderate to marked (R.450-458).

Based on the evidence presented, the Commissioner determined:

> The claimant has not engaged in substantial gainful activity since October 25, 2011, the application date.
>
> The claimant has the following severe impairments: bipolar disorder, depression, and panic disorder.
>
> The records confirm the medically determinable impairments listed above. They are "severe" according to the regulations because they cause more than minimal limitations in the claimant's ability to perform basic work activities. While it is reasonable to find that these impairments limit the claimant's functioning, the limitations are fully accommodated by the residual function capacity …
>
> In a pre-hearing memorandum, the claimant's representative alleged the claimant has severe physical impairments of hyperlipidemia, left shoulder pain, joint pain, obstructive sleep apnea, impaired fasting glucose, and possible fibromyalgia… At the hearing, the clamant alleged that her mental impairments are the most limiting… I find the alleged physical impairments are nonsevere. Nonetheless, they are accommodated by a residual functional capacity for light exertion work…
>
> In activities of daily living, the claimant has mild restrictions …

5

In social functioning, the claimant has moderate difficulties. The claimant testified and explained in written reports that she isolates herself from others and has no interest in social activities…

With regard to concentration, persistence or pace, the claimant has mild difficulties…

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The "paragraph C" criteria of Listing 12.04 <u>Affective Disorders</u> … require either a medically documented history of mental disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities. The "paragraph C" criteria of Listing 12.06, <u>Anxiety-Related Disorders,</u> require documentation of a complete inability to function independently outside the area of one's home... She reported she is the primary caregiver of her son, indicating she does not require a highly supportive living arrangement. The claimant also reported she is able to leave her home to attend appointments and shop. Accordingly, the "paragraph C" criteria are not satisfied….

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work … except she is limited to simple and repetitive tasks involving routine work processes and setting. She must avoid high stress, which is defined as high quotas and close attention to quality production standards. The claimant is further limited to no crowds, no teamwork, and no interaction with the public…

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible…

The records demonstrate the claimant has a long history of depression and bipolar disorder… In October 2011, days prior to the application filing date, the claimant was psychiatrically hospitalized for seven days. She was assessed with bipolar disorder, cannabis abuse, and benzodiazepine abuse. The claimant admitted that she was no longer taking prescribed medication for her symptoms at that time, but was purchasing Xanax off the street. Upon discharge, she was found to be

psychiatrically stable and follow up with her primary care physician was recommended…

During a psychologist examination performed in April 2012, the claimant demonstrated some improvement, as indicated by a GAF score of 55. Although her treatment providers indicated minimal improvement with medication, the claimant was assessed with a GAF score of 56 later that month. After changes were made in her medications, the claimant alleged having increased symptoms … but was still found to have improvement, including GAF scores of 57 to 59 through July 2012. By October 2012, the claimant reported improvement in mood swings, anger and depression, and alleged she was "on an even keel." At that time, she was found to have a GAF score of 60, indicating almost mild mental health symptoms…

A review of the claimant's work history shows that the claimant worked inconsistently prior to the alleged disability onset date…

Based upon her review of the evidence of record, Dr. Rings indicated the claimant has no more than moderate limitations in functioning… Because these findings are supported by the treatment records, as well as the claimant's report of improvement with treatment, they are afforded great weight…

In November 2011, Dr. Ruth Martin, the claimant's primary care physician, prepared paperwork on the claimant's behalf. The forms she completed indicated the claimant has no limitations in following instructions or making work-related decisions. Moderate limitations were found in interacting with others, and marked difficulties were found in responding to stress and change…

Cynthia Peterson-Handley, Ph.D. a consultative psychologist examined and interviewed the claimant in December 2011… Dr. Peterson-Handley assessed the claimant with bipolar disorder, panic disorder, rule out obsessive-compulsive disorder, and rule out attention deficit hyperactivity disorder. She also found the claimant had a GAF score of 45. The consultative psychologist indicated the claimant has moderate to marked limitations in following even simple instructions and making decisions. Marked to extreme difficulties were noted in interacting with others and responding to stress and change…

After a careful consideration of all the evidence and from the opinion evidence as weighed, I do not find the claimant's allegations of disability fully credible…

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform…

I conclude that considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful

adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate … (39-46).

While the plaintiff alleges physical as well as mental disability, her physical symptoms clearly do not rise to the level of being disabling. More troublesome are her mental illness problems. She has been hospitalized twice for mental illness and repeatedly diagnosed with a bipolar disorder as well as depression. While some have opined that these conditions are not disabling, her treating doctor, Dr. Ruth Martin who treated the plaintiff over a period from 2009 through 2013 noted a labile mood and vegetative symptoms with mild to moderate restrictions in daily activities and marked limitations in dealing with others, being involved in stressful circumstances, and an inability to maintain appropriate affect in a normal work environment. Additionally, in December 2014, Cynthia Peterson-Handley, Ph.D. made a similar diagnosis and concluded that the plaintiff's prognosis was poor, and that she had moderated to marked limitations. Thus, the indication of the consultative evaluations appears to be at great odds with her treating physician. A treating source's opinion on the nature and severity of the claimant's impairment will be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2). Here Dr. Martin's conclusions appear to be supported by other evidence in the record and for this reason should be accorded "controlling weight."

Summary judgment is appropriate where there are no material factual issues in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. U.P.M.C., 691 F.3d 294,300 (3d Cir.2012). In the instant case there are no material issues of fact in dispute, and it appears that the Commissioner's conclusion is not supported by substantial evidence. Accordingly, the plaintiff's motion for summary judgment (ECF No.11) will be GRANTED; the defendant's motion for summary judgment (ECF No.13) will be DENIED and the conclusion of the Commissioner will be REVERSED.

An appropriate ORDER will be entered.

ORDER

AND NOW, this 7th day of April, 2015, for the reasons set forth in the foregoing Memorandum, the plaintiff's motion for summary judgment (ECF No.11) is GRANTED; the defendant's motion for summary judgment (ECF No.13) is DENIED and the conclusion of the Commissioner is REVERSED.

s/ Robert C. Mitchell
United States Magistrate Judge